# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| TIMOTHY HERNANDEZ, | ) | |
| Plaintiff, | ) ) | Case No.: 1:24-cv-5353-HG |
| vs. | ) ) ) | |
| | ) | |
| THUY DIEP, LLC, | ) ) | |
| Defendant. | ) ) | |
| | ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**STEIN SAKS, PLLC**

*/s/Rami Salim*
Rami Salim, Esq.
One University Plaza, Ste. 620
Hackensack, NJ 07601
Ph: 201-282-6500
Fax: 201-282-6501

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................... ii

I.    INTRODUCTION ............................................................................................................ 1

II.   FACTUAL BACKGROUND............................................................................................ 1

III.  STANDARD OF REVIEW .............................................................................................. 2

IV.   LEGAL ARGUMENT ...................................................................................................... 4

   A.   DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE

   PLAINTIFF HAS MET HIS BURDEN TO SHOW THAT HE HAS ARTICLE III

   STANDING. ......................................................................................................................... 4

       i.    Plaintiff Has Alleged Sufficient Facts Evincing Past Injury............................. 4

       ii.   Plaintiff Has Established Her Intent to Return to the Website........................... 7

       iii.  The Fact that Plaintiff Filed Other Website Accessibility-based Suits Does Not Mean

       He Has Not Demonstrated Article III Standing in this Case. .................................... 9

   B.   PLAINTIFF'S NYCHRL CLAIMS SURVIVE AND PLAINTIFF IS ENTITLED TO

   PUNITIVE DAMAGES, CIVIL PENALTIES, AND FINES UNDER THE NYCHRL. ........ 11

V.    CONCLUSION ............................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**

*Bautz v. ARS Nat'l Servs.*, 226 F. Supp. 3d 131 (E.D.N.Y. 2016)...................................................3

*Bernstein v. City of New York*, 621 F. App'x 56 (2d Cir. 2015) ..................................................3

*Cabrera v. City of N.Y.*, 2014 NY Slip Op 30533(U) (Sup. Ct.) ................................................12

*Calcano v. Swarovski North America Ltd.*, 36 F.4th 68, 76 (2d Cir. 2022) .................. 7, 9, 10, 11

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016).............................................. 3, 13

*Chalas v. Barlean's Organic Oils, LLC*, No. 22 Civ 04178 (CM), 2022 U.S. Dist. LEXIS 211816

    (S.D.N.Y. Nov. 22, 2022) .............................................................................. 6, 8

*Chauca v. Abraham*, 30 N.Y.3d 325 (2017) ....................................................................... 13, 14

*Donet v. Isamax Snacks, Inc.*, No. 1:23-cv-01286 (PAE) (SDA), 2023 U.S. Dist. LEXIS 141913

    (S.D.N.Y. Aug. 14, 2023) .......................................................................................... 6

*Exchange Nat'l Bank of Chi. V. Touche Ross & Co.*, 544 F.2d 1126 (2d Cir. 1976)....................3

*Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647 (S.D.N.Y. 2017) ................................5

*Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104 (2d Cir. 2018) .....................................4

*Heckler v. Mathews*, 465 U.S. 728 (1984)...................................................................................5

*Jaquez v. Dermpoint, Inc.*, No. 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067 (S.D.N.Y.

    May 20, 2021) ...........................................................................................................7

*John v. Whole Foods Market Group, Inc.*, 858 F.3d 732 (2d Cir. 2017).....................................6

*Katz v. Donna Karan Co.*, L.L.C., 872 F.3d 114 (2d Cir. 2017) ................................................3

*Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184 (2d Cir. 2013).............................................4

*Loadholt v. ShirtSpace*, No. 22-CV-02870 (ALC), 2023 U.S. Dist. LEXIS 36924 (S.D.N.Y. Mar.

    6, 2023).....................................................................................................................8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................3

*Maddy v. Life Time, Inc.*, No. 22-cv-5007 (LJL), 2023 U.S. Dist. LEXIS 115503 (S.D.N.Y. July

    5, 2023).................................................................................................................8, 11

*Pustilnik v. Battery Park City Auth.*, 71 Misc. 3d 1058 (Sup. Ct. 2021) ............................. 12, 13

*Shain v. Ellison*, 356 F.3d 211 (2d Cir. 2004) ...........................................................................3

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ............................................................................3

*Tavarez v. Moo Organic Chocolates, LLC*, 641 F. Supp. 3d 76 (S.D.N.Y. 2022) .................. 7, 10

*Thompson v. Equifax Info. Servs. LLC*, No. 20-CV-6101 (RPK) (ST), 2022 U.S. Dist. LEXIS 32935 (E.D.N.Y. Feb. 24, 2022) ........................................................................................ 4

*Walters v. Fischer Skis U.S., LLC*, No. 6:21-CV-1115 (LEK/ATB), 2022 U.S. Dist. LEXIS 142148 (N.D.N.Y. Aug. 10, 2022) ....................................................................................... 6

*Williams v. Rhea*, No. 10-CV-5440 (FB), 2012 U.S. Dist. LEXIS 99244 (E.D.N.Y. July 17, 2012) ................................................................................................................................. 5

**Statutes**

42 U.S.C. § 12182 .............................................................................................................. 1

N.Y.C. Admin. Code § 8-101 ............................................................................................ 1

N.Y.C. Administrative Code § 8-130 [a] ......................................................................... 13

U.S. Const., Art. III, § 2 ..................................................................................................... 2

**Rules**

Fed. R. Civ. P. 12(b)(1) ..................................................................................................... 2

## I.  <u>INTRODUCTION</u>

Defendant Thuy Diep, LLC, ("Thuy Diep" or "Defendant") moves under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's claims brought under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* Defendant argues that this Court lacks subject-matter jurisdiction because Plaintiff Timothy Hernandez ("Hernandez" or "Plaintiff") does not have Article III standing under the ADA, specifically alleging that Plaintiff has failed to plead adequate facts to support his allegations of an injury-in-fact, as well as his intent to return to the Website. Second, Defendant argues that this Court should dismiss Plaintiff's related state law claims brought under the NYCHRL.

As will be discussed further below, this Court should deny Defendant's Motion to Dismiss in its entirety. First, this Court has subject-matter jurisdiction over this case because Plaintiff has satisfied the jurisdictional requirements of Article III by alleging (i) a particularized interest in the "Casita Collection: Laura 2-piece Lounge Set in Lavender Florals" (the "Lounge Set"), a product for sale on Defendant's Website; (ii) the specific accessibility issues he encountered while attempting to navigate the Website; and (iii) an intent to return to the Website once the accessibility issues are remediated. For the same reasons, Plaintiff's state law claims should not be dismissed.

## II.  <u>FACTUAL BACKGROUND</u>

Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using the computer. *See* Complaint, ¶ 2. For screen-reading software to function, the information on a website must be capable of being rendered into text. *Id.* at ¶ 33. If the website content is not capable of being rendered into text, a blind or visually-impaired user is unable to access the same content that is available to sighted users. *Id.* Defendant owns and

operates the website, www.littlemoony.com (the "Website"). *Id.* at ¶¶ 4, 37. The Website offers products and services for online sale and general delivery to the public. *Id.* at ¶ 38. Specifically, the Website offers features which ought to allow users to browse for items, access navigation bar descriptions, inquire about pricing, and avail consumers of the ability to peruse the numerous items offered for sale. *Id.*

Plaintiff wanted to purchase a lounge set for his child (the Casita Collection: Laura 2-piece Lounge Set in Lavender Florals). *Id.* at ¶ 40. Plaintiff wanted to purchase this product because he was looking for a clothing set for his child. *Id.* at ¶ 41. Plaintiff then attempted multiple times prior to filing suit, most recently on June 12, 2024, to visit Defendant's website using his screen-reading software and to purchase the Lounge Set. *Id.* at ¶ 43. However, he encountered multiple barriers that have denied him the full and equal access to Defendant's online goods, content, and services. *Id*. at ¶¶ 43-46. Due to Defendant's failure to build the Website in a manner that is compatible with screen-reading programs, Plaintiff was unable to understand and properly interact with the Website, and was thus denied the benefit of purchasing the Lounge Set. *Id.* at ¶ 25. Plaintiff's Complaint specifically describes the ways in which the Website was incompatible with his screen-reading software. *Id.* at ¶¶ 44-45. Despite this direct harm and frustration that Plaintiff has already suffered due to the inaccessibility of the Website, Plaintiff nevertheless intends to access the Website in the future if it is made accessible. *Id.* at ¶ 29.

## III.    <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to assert in a motion to dismiss that a plaintiff lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Article III of the U.S. Constitution limits the jurisdiction of federal courts to "cases" and "controversies," which is rooted in the concept of standing. U.S. Const., Art. III, § 2; *Bautz v. ARS Nat'l Servs.*, 226 F. Supp.

3d 131, 137 (E.D.N.Y. 2016). To assert federal subject-matter jurisdiction, a party must have Article III standing. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016). The United States Supreme Court has established that standing consists of three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). When a plaintiff seeks injunctive relief, she must also prove that the identified injury in fact presents a "real and immediate threat of future injury" often termed a "likelihood of future harm." *Bernstein v. City of New York*, 621 F. App'x 56, 57 (2d Cir. 2015) (summary order) (quoting *Shain v. Ellison*, 356 F.3d 211, 215-16 (2d Cir. 2004)).

The Second Circuit draws a distinction between two types of Rule 12(b)(1) motions challenging federal subject-matter jurisdiction: facial challenges and fact-based challenges. *Carter,* 822 F.3d at 56-57; *see also Katz v. Donna Karan Co.*, L.L.C., 872 F.3d 114, 119 (2d Cir. 2017). A facial challenge is "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Carter*, 822 F.3d at 56. Under a facial challenge, a plaintiff must "allege facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Id.* In order to make that determination, a court must accept the complaint's allegations as true "and draw all reasonable inferences in favor of the plaintiff." *Id.* at 57 (citation omitted). In a fact-based challenge, a defendant may proffer evidence beyond the pleadings. *Id.* at 55. To oppose a fact-based challenge to subject-matter jurisdiction, a plaintiff must present controverting evidence "if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems" with respect to jurisdiction. *Id.* (quoting *Exchange Nat'l Bank of Chi. V. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

"In reviewing standing under the ADA, a broad view of constitutional standing is appropriate because private enforcement suits are the primary method of obtaining compliance with the Act." *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. LEXIS 209202, at *25 (S.D.N.Y. Dec. 4, 2019). The threshold for Constitutional standing is appreciably lower on a 12(b)(1) motion than it is, for example, on a motion under 12(b)(6). *See Thompson v. Equifax Info. Servs. LLC*, No. 20-CV-6101 (RPK) (ST), 2022 U.S. Dist. LEXIS 32935, at *13-14 (E.D.N.Y. Feb. 24, 2022) ("Yet, here, we are at the pleading stage where general factual allegations of injury are sufficient to plead standing."); *see also Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018) ("It is well established in principle that the pleading standard for constitutional standing is lower than the standard for a substantive cause of action.").

In the ADA context, the Second Circuit has found standing "where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer . . . that plaintiff intended to return to the [public accommodation]." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013). These are what are now known as the *Kreisler* factors. "To satisfy standing in ADA website cases specifically, courts in this district have required the plaintiff to allege certain facts in detail, including when they attempted to access to the website, what they were attempting to do on the website, the specific barriers that prevented them from gaining access, and how they intend to utilize the website in the future." *Angeles v. Grace Prods.*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317, at *3-4 (S.D.N.Y. Sep. 23, 2021) (citing cases).

## IV.  LEGAL ARGUMENT

### A. DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFF HAS MET HIS BURDEN TO SHOW THAT HE HAS ARTICLE III STANDING.

#### i.  Plaintiff Has Alleged Sufficient Facts Evincing Past Injury.

4

Plaintiff has adequately alleged past injury, the first *Kreisler* factor, by alleging that on multiple prior occasions, while attempting to access the Website and purchase the Lounge Set, he "encountered [barriers that] have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis from equal access to the Website." Complaint, ¶ 49. Those barriers included missing alternative text, hidden elements on web pages, incorrectly formatted lists, unannounced pop ups, unclear labels for interactive elements, the requirement that some events be performed solely with a mouse, and a host of broken links which left Plaintiff unable to navigate or otherwise determine where he was on the Website. *Id*. at ¶¶ 44-45. "These access barriers effectively denied Plaintiff the ability to use and enjoy Defendant's website the same way sighted individuals do." *Id.* at ⁋ 46.

Contrary to Defendant's assertion otherwise, Plaintiff *has* suffered harm by the very nature of discrimination itself. *See Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647, 655 (S.D.N.Y. 2017) ("If a barrier violating [the ADA] standards relates to a plaintiff's particular disability, it is understood to impair the plaintiff's full and equal access, which constitutes discrimination under the ADA [and] is considered to satisfy the 'injury-in-fact' element[.]"); *see also Williams v. Rhea*, No. 10-CV-5440 (FB), 2012 U.S. Dist. LEXIS 99244, at *6 (E.D.N.Y. July 17, 2012) ("Being subjected to discrimination in violation of [the ADA's] provisions is itself an injury sufficient to confer Article III standing."); *Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984) ("Discrimination itself, by perpetuating 'archaic and stereotypic' notions or by stigmatizing members of the disfavored group as 'innately inferior' and therefore as less worthy participants in the political community, can cause serious noneconomic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group.").

These allegations are sufficient to survive a 12(b)(1) motion. *See Angeles*, 2021 U.S. Dist. LEXIS 182317 at *4-5 (finding past injury where the plaintiff explained in a supplemental affidavit that "(1) her screen-reading software was unable to discern which products were on the screen and distinguish between different screens on the website due to the failure of the website to adequately describe its content and (2) she encountered problems with broken links that prevented her from using the screen reader to return to her search."); *see also Camacho,* 2019 U.S. Dist. LEXIS 209202, at *26 (past injury established where plaintiff alleged that the website's "navigation tabs were incompatible with his screen-reading software" and plaintiff was "unable to utilize the Website's net price calculator because that page was also incompatible with his screen-reading software."); *Walters v. Fischer Skis U.S., LLC*, No. 6:21-CV-1115 (LEK/ATB), 2022 U.S. Dist. LEXIS 142148, at *9-11 (N.D.N.Y. Aug. 10, 2022) (plaintiff adequately alleged past injury by identifying access barriers on the website in the "'Remember' and 'Compare' buttons, the cart confirmation window, and the 'Freeride' product page."); *Chalas v. Barlean's Organic Oils, LLC*, No. 22 Civ 04178 (CM), 2022 U.S. Dist. LEXIS 211816, at *6 (S.D.N.Y. Nov. 22, 2022) (allegations that plaintiff encountered various access barriers sufficient to establish past injury, including that "the screen reader failed to inform Plaintiff about whether a selected item had been added to her shopping cart, did not provide Plaintiff with the ability to pay for items in her cart; and failed to read various pieces of information on the website.").

Nor is it necessary to allege these barriers with any more detail given the low pleading threshold of Rule 8. *See John v. Whole Foods Market Group, Inc.*, 858 F.3d 732, 738 (2d Cir. 2017) ("We have repeatedly described [the injury-in-fact] requirement as a 'low threshold.'"); *see also Donet v. Isamax Snacks, Inc.*, No. 1:23-cv-01286 (PAE) (SDA), 2023 U.S. Dist. LEXIS 141913, at *7 (S.D.N.Y. Aug. 14, 2023) ("Further detail on which locations on the website are out

of compliance with the applicable statutes is not necessary at this stage because a complaint need not provide 'detailed factual allegations' to survive a motion to dismiss."); *Jaquez v. Dermpoint, Inc.*, No. 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067, at *4-5 (S.D.N.Y. May 20, 2021) (concluding that general allegations of access barriers, including the website's failure to "describe the contents of graphical images," "properly label title[s]," and "distinguish one page from another," as well as encountering "multiple broken links," were sufficient to survive a motion to dismiss and establish past injury); *Tavarez v. Moo Organic Chocolates, LLC*, 641 F. Supp. 3d 76, 81 (S.D.N.Y. 2022) (past injury established where plaintiff alleged that he encountered "certain difficulties" in navigating the website). Considering the "low threshold" of the injury-in-fact requirement and the deterrence Plaintiff has experienced while using Defendant's Website, he has adequately alleged past injury under the ADA.

### ii.    Plaintiff Has Established His Intent to Return to the Website.

Defendant relies heavily on the Second Circuit's holding in *Calcano v. Swarovski North America Ltd.* to establish that Plaintiff has not sufficiently evinced his intent to return to the Website once the accessibility barriers are remediated. 36 F.4th 68, 76 (2d Cir. 2022). Indeed, prior to *Calcano* and its immediate aftermath, courts consistently found Article III standing based on allegations establishing the basic facts of intent to return. *See Tavarez*, 641 F. Supp. 3d at 83 (distinguishing *Calcano*, which "'fail[ed] to provide *any* details about [plaintiffs'] past visits,'" and finding that the amended complaint sufficiently alleged intent to return at the motion to dismiss stage because it "specifies three dates on which Plaintiff accessed Defendant's website, the specific product Plaintiff allegedly seeks to buy, his habit of consuming chocolate, and characteristics of [the product] that he finds attractive."); *see also Sanchez*, 2022 U.S. Dist. LEXIS 51247 at *5 (allegations that the plaintiff "unsuccessfully tried to navigate the Website, that the site's barriers deter [the plaintiff] from visiting the Website in the future, and that [the plaintiff] intends to visit

7

the site again in the future when the barriers are cured" sufficient to establish intent to return to the website where the plaintiff additionally "makes note of his particular interest in pistachio nuts" and websites themselves "are already easily accessible at any moment."); *Angeles*, 2021 U.S. Dist. LEXIS 182317 at *5 (intent to return established where the plaintiff's "alleges that she is concerned with health and hygiene when purchasing beauty supplies and is interested in Defendant's products because they are free of chemicals and other unnatural ingredients.").

Courts in this jurisdiction continue to find standing where the allegations, although perhaps not novel-length, nevertheless establish the factual basis for the plaintiff's interest in the website. *See Loadholt v. ShirtSpace*, No. 22-CV-02870 (ALC), 2023 U.S. Dist. LEXIS 36924, at *6-7 (S.D.N.Y. Mar. 6, 2023) (finding intent to return adequately pled where "Plaintiff has alleged the specific product he intended to purchase—a T-shirt … where Defendant is an apparel retailer and where Plaintiff alleges that he was unable to navigate Defendant's website so that he could properly browse for a specific T-shirt and complete his purchase."); *see also Chalas*, 2022 U.S. Dist. LEXIS 211816 at *8-9 (distinguishing *Calcano* and finding that the plaintiff adequately pled injury-in-fact based on an alleged interest in stomach repair supplements for her cousin and a particularized interest in the website based on the defendant's commitment to staying "ahead of the curve"); *Davis*, 2023 U.S. Dist. LEXIS 115542 at *18-20 (distinguishing *Calcano* and finding intent-to-return where the plaintiff "alleges that he enjoys honeyed butter, is generally interested in organic food as part of his diet, and was interested in trying a new brand to enjoy a healthy and tasty new food," and where the defendant's honey butter is distinctive for its health-centric and environmentally friendly features); *Maddy v. Life Time, Inc.*, No. 22-cv-5007 (LJL), 2023 U.S. Dist. LEXIS 115503, at *13-14 (S.D.N.Y. July 5, 2023) (finding intent-to-return where the plaintiff "alleges that she has a hobby of collecting body lotions and oils from various brands and

8

enjoys purchasing different branded lotions to add to her collection, and the website offers a specific oil, the Morroccan Oil Dry Body Oil, which is a high quality body lotion that Plaintiff wants to add to her collection.").

Taken as a whole, Plaintiff's allegations persuasively explain why he is interested in returning to the Website to purchase the Lounge Set. As the Second Circuit explained in *Calcano*, "the central inquiry is not whether a complaint pleads the magic words that a plaintiff 'intends to return,' but if, 'examined under the "totality of all relevant facts,"' "the plaintiff plausibly alleges 'a real and immediate threat of future injury.'" *Calcano*, 36 F.4th at 75 (citations omitted). Thus, the question is not whether particular paragraphs plead the magic words "I intend to return," but whether, taken as a whole, Plaintiff's interest in returning to the Website is a plausible one. Given the circumstances behind Plaintiff's interest in clothing sets for his child, the answer is an obvious "yes."

### iii.   The Fact that Plaintiff Filed Other Website Accessibility-based Suits Does Not Mean He Has Not Demonstrated Article III Standing in this Case.

Defendant argues that *Calcano* all but forecloses Plaintiff's claims because, as a serial litigant, Plaintiff does not have any real interest in the websites he has sued, but is only interested in exacting compliance with the ADA. But *Calcano* is distinguishable from the facts of this case. In that case, the Second Circuit rejected the plaintiffs' standing because the complaints (consolidated for purposes of appeal) were so riddled with "errors, oddities and omissions" – errors that went to the heart of the plaintiffs' intent to return – that the court struggled with the veracity of the allegations. *See Calcano*, 36 F.4th at 77 (reasoning that the "Mad-Libs-style complaints further confirms the implausibility of their claims of injury," and noting, as examples, that "Murphy asserts that he would return to a Kohl's that doesn't exist" and "Dominguez seeks to go back to Banana Republic for its food."). Coupled with the boilerplate nature of the complaints and

9

the fact that the plaintiffs were serial litigators who had filed hundreds of such complaints, the Circuit Court refused to find standing. *Id.* at 76-77.

Defendant points to no error in the Complaint, or any of the other ADA claims Plaintiff has filed with this firm, that so troubled the Second Circuit. To the extent that such errors exist, they do not go to the heart of Plaintiff's intent to return to these websites, as was the case in *Calcano*. Aside from the boilerplate nature of the Complaint – a daily fact of life for most plaintiff firms, whether they bring personal injury claims or intellectual property claims such as copyright infringement – Defendant has failed to point to any other aspect of *Calcano* that would call into question the veracity of Plaintiff's allegations. Whatever may be said for Plaintiff's status as a serial litigator – asserted on the basis that Plaintiff has filed other ADA claims, the very notion of which seems faintly absurd – none of the other troubling aspects of *Calcano* are present here.

Courts in this jurisdiction have recognized these distinctions in finding standing. *See Davis*, 2023 U.S. Dist. LEXIS 115542 at *18-20 (rejecting the defendant's reliance on *Calcano* "as the plaintiffs 'offered only "naked assertions"' of intent to return to [d]efendants' stores if they offer braille gift cards," whereas, "[h]ere, the allegations concerning intent to return are significantly more detailed[.]"); *see also Tavarez*, 641 F. Supp. 3d at 83 (distinguishing *Calcano* where the plaintiffs "'fail[ed] to provide *any* details about [plaintiffs'] past visits' to defendants' public accommodations, the frequency of such visits, which items they purchased, or why they wanted to purchase certain items from the defendants."). *Calcano* does not stand for the broader, completely untethered proposition that any ADA complaint, no matter the allegations or the detail provided, must be summarily dismissed if it is contemporaneous with other ADA complaints of a similar nature or based on a similarly-worded complaint. As the Second Circuit noted, "the central inquiry is not whether a complaint pleads the magic words that a plaintiff 'intends to return,' but if,

'examined under the "totality of all relevant facts,"' the plaintiff *plausibly* alleges 'a real and immediate threat of future injury.'" *Calcano*, 36 F.4th at 75 (emphasis added). Considering the totality of facts alleged in the Complaint, Plaintiff has met that burden here.

Simply put, Defendant's reliance on Plaintiff's status as a "serial litigator" is not persuasive. The fact that singular plaintiffs file dozens of these complaints reflects the widespread discrimination that the visually-impaired face on a daily basis and the ubiquitous nature of the internet itself. *See Maddy*, 2023 U.S. Dist. LEXIS 115503 at \*15-16 (rejecting the defendant's arguments that filing over 70 complaints made the plaintiff's allegations of intent to return implausible and reasoning, "It is not uncommon for people to use and attempt to access multiple websites a day—whether looking for information or to buy something. And, it is not implausible that many such websites have issues that make them inaccessible to visually impaired persons. Thus, the fact that Plaintiff has filed many similar lawsuits to this one may, as Plaintiff argues, reflect the systematic issues that visually impaired consumers face on a daily basis…"); *see also Davis*, 2023 U.S. Dist. LEXIS 115542 at \*10-11 ("The fact that Plaintiff has filed nearly fifty complaints may just as well reflect the rampant nature of discrimination that persons with visual impairments face when using the internet. It is also not surprising, in light of the ubiquitous role that the internet plays in people's lives, that Plaintiff may have intended to visit and to use over fifty websites."). Defendant's attempts to twist this basic reality into something other than what it is reflects a profound ignorance of the access barriers that the visually impaired encounter on a daily basis.

### B. PLAINTIFF'S NYCHRL CLAIMS SURVIVE AND PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES, CIVIL PENALTIES, AND FINES UNDER THE NYCHRL.

Even if Plaintiff's ADA claims are dismissed, Plaintiff's NYCHRL claims are judged by a different standard and survive. The Supreme Court of New York came to the same conclusion:

> It is undisputed that the NYCHRL's pleading standards are materially looser than the trans-substantive plausibility standard of the Federal Rules of Civil Procedure— or, for that matter, the CPLR's notice-pleading standard for claims under the NYSHRL. (*See Williams v New York City Hous. Auth.*, 61 AD3d 62, 65-69, 872 N.Y.S.2d 27 [1st Dept 2009]; *Vig v NY Hairspray Co., L.P.*, 67 AD3d 140, 145, 885 N.Y.S.2d 74 [1st Dept 2009].) As a result, allegations that would be insufficient to state a federal claim might well be enough to state a cause of action under the NYCHRL. This difference defeats defendants' estoppel argument.

*Pustilnik v. Battery Park City Auth.*, 71 Misc. 3d 1058, 1069 (Sup. Ct. 2021); *see also Cabrera v. City of N.Y.*, 2014 NY Slip Op 30533(U), at *6-7 (Sup. Ct.) ("However, it bears noting that contrary to defendants' assertion, New York State courts, even after the decision in *Ashcroft*, have consistently applied the standards promulgated by New York State case law when confronted with a motion seeking to dismiss a cause of action pursuant to 42 USC § 1983, on grounds that the complaint fails to state a cause of action.").

In considering whether to reject the plaintiff's NYCHRL claims on grounds of collateral estoppel after the plaintiff's ADA claims had been dismissed at the federal level, *Pustilnik* noted,

> The First Department has been careful to emphasize in this context that estoppel will apply only where the federal court was deciding "strictly factual question[s] not involving application of law to facts or the expression of an ultimate legal conclusion," because these factual determinations do "not implicate any of the several ways" in which analysis of NYCHRL claims is "not identical to their federal and state counterparts."

*Pustilnik*, 71 Misc. 3d at 1069-70.

The court further noted that the federal court's 12(b)(6) dismissal was a legal determination regarding the sufficiency of the allegations that spoke more to the difference in the two pleading standards than it did to factual determinations by the court. *Id.* at 1070. The court explained, "The district court held that Pustilnik's allegations did not plausibly raise the necessary inference of discrimination." *Id.* "That holding does not resolve a strictly factual question. Rather, it is

12

grounded in the threshold set by federal law for when plaintiffs' allegations should entitle them to proceed past the pleading stage and obtain discovery from defendants." *Id.* "The CPLR and the NYCHRL, on the other hand, set a different, lower threshold." *Id.* The court therefore concluded that "the federal court's dismissal of Pustilnik's age-discrimination and disability-discrimination claims brought under federal law does not estop Pustilnik from relying on the same allegations to assert discrimination claims under the NYCHRL." *Id.*

This Court should follow this decisional caselaw. The CPLR and NYCHRL set a different, lower pleading threshold than does the FCRP. Dismissal of Plaintiff's ADA claims at the federal level does not resolve any factual questions, but speaks more to the difference in those two standards. Thus, Plaintiff's NYCHRL claims survive even with the dismissal of his ADA claims. Moreover, any dismissal under 12(b)(1) is necessarily without prejudice, preserving his NYCHRL claims for state court. *See Carter*, 822 F.3d at 54.

Additionally, Plaintiff is entitled to punitive damages, civil penalties, and fines under the NYCHRL. In 2005, the New York City Council amended Administrative Code § 8-130 [a] to ensure "[t]he provisions of [the NYCHRL] shall be construed liberally … regardless of whether federal or New York state civil and human rights laws … have been so construed." *See* N.Y.C. Administrative Code § 8-130 [a].

> Expressing concern that the NYCHRL was being too strictly construed, the amendment established that similarly worded state or federal statutes may be used as interpretive aids only to the extent that the counterpart provisions are viewed "as a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise," and only to the extent that those state or federal law decisions may provide guidance as to the "uniquely broad and remedial purposes" of the local law (Local Law No. 85 [2005] of City of NY §§ 1, 7).

*Chauca v. Abraham*, 30 N.Y.3d 325, 333 (2017). Applying the newly adopted standards, the Court of Appeals of New York succinctly stated,

> [T]he standard articulated in *Home Ins.* requires neither a showing of malice nor awareness of the violation of a protected right, representing the lowest threshold, and the least stringent form, for the state of mind required to impose punitive damages. By implementing a lower degree of culpability and eschewing the knowledge requirement, applying this standard adheres to the City Council's liberal construction mandate while remaining consistent with the language of the statute (*see* Administrative Code § 8-502 [a]).

*Chauca*, 30 N.Y.3d at 333-34. The court concluded that this lower standard is "properly reflective of the serious and destructive nature of the underlying discriminatory conduct and the goal of deterring 'future reprehensible conduct'" and "encourages nondiscriminatory behavior and the development and application of appropriate employment criteria." *Id.*

Accordingly, Plaintiff's allegations of discrimination on the basis of access barriers on the Website is sufficient to establish punitive damages, civil penalties and fines under the NYCHRL. Even if it were not, Plaintiff's additional allegation that it is Defendant's policy not to remediate the Website in accordance with industry-wide standards under the ADA establishes same.

## C. PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND SHOULD THIS COURT BE INCLINED TO GRANT DEFENDANT'S MOTION TO DISMISS.

Although it is Plaintiff's position that an amended complaint is not necessary in this matter, should this Court be inclined to grant Defendant's Motion to Dismiss, it should grant Plaintiff leave to file an Amended Complaint. Federal Rule of Civil Procedure 15(a) provides that "a party may amend the party's pleading . . . by leave of court . . . and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "This is a 'permissive' standard, and the Second Circuit has instructed that leave to amend should be liberally granted, consistent with the Circuit's 'strong preference for resolving disputes on the merits.'" *Henry v. Fox News Network, LLC*, 629 F. Supp. 3d 136, 153 (S.D.N.Y. 2022) (citing *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)).

14

Where "the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile," district courts within the Second Circuit will deny leave to amend. *See Agerbrink v. Model Serv. LLC*, 155 F.Supp.3d 448, 452 (S.D.N.Y. 2016). While several factors may serve as a good reason for a court to deny leave to amend, the rule is "interpreted liberally, [and] an amendment is normally permitted." *Ohio Cas. Ins. Co. v. Transcontinental Ins. Co.*, No. 05-6432, 2006 U.S. Dist. LEXIS 34856, 2006 WL 1540540, at *1 (S.D.N.Y. May 31, 2006).

While it is Plaintiff's position that an amended complaint is not necessary, Defendants' have offered no arguments that doing so would cause undue delay or unfairly prejudice them in any way. As this Court has opined previously, a plaintiff should be granted the benefit of the *Court's* reasoning for believing that a complaint is deficient before denying them an opportunity to cure:

> While it is true that many of the defects identified in this opinion were also highlighted by Defendants' first motion to dismiss, the Second Circuit has repeatedly emphasized that a plaintiff should be given an opportunity to amend with the benefit of the court's reasoning. *Id*. ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."); *see also Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 25 (2d Cir. 2017) ("The proper time for a plaintiff to move to amend the complaint is when the plaintiff learns from the District Court in what respect the complaint is deficient. Before learning *from the court* what are its deficiencies, the plaintiff cannot know whether he is capable of amending the complaint efficaciously." [(emphasis added)]).

*Henry*, 629 F. Supp. 3d at 153-54. Thus, should this Court deem an amended complaint appropriate, leave to do so should not be denied.

## V.   **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss should be denied in its

entirety. Plaintiff has shown standing and, as such, this Court should retain supplemental jurisdiction over Plaintiff's state law claims. Furthermore, Plaintiff requests leave to amend its Complaint on any factual issues.

Dated: November 21, 2024

<div style="margin-left: 40%;">

Respectfully Submitted,

**STEIN SAKS, PLLC**

*/s/Rami Salim*_____
Rami Salim, Esq.
One University Plaza Drive, Suite 620
Hackensack, New Jersey 07601
Phone: 201-282-6500
Fax: 202-282-6501
rsalim@steinsakslegal.com

</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2024, I electronically served the foregoing served this day on all counsel either via email or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_/s/Rami Salim_
Rami Salim, Esq.